**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

FREEMAN ALLEN FELDER,
CDCR #BF-3902,

Plaintiff,

vs.

K. JUAREZ, et al.,

Defendants.

Case No.: 3:26-cv-00267-BTM-DEB

**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(a)**

**[ECF NO. 2]**

Plaintiff Freeman Allen Felder, who is proceeding *pro se* and currently incarcerated at Kern Valley State Prison in Lancaster, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1 ("Compl.")), together with a motion to proceed *in forma pauperis* ("IFP") (ECF No. 2). Plaintiff claims the California Department of Corrections and Rehabilitation ("CDCR"), its Office of Appeals, and thirty individual correctional, medical, and inmate appeals officials at Richard J. Donovan Correctional Facility ("RJD") violated his First, Eighth, and Fourteenth Amendment rights on multiple occasions while he was incarcerated there between January 2024 and August 2025. (*See* Compl. at 9–18.) Plaintiff seeks injunctive relief preventing further acts of retaliation and transfer, as well as $8 million in costs and damages. (*Id.* at 19.)

For the reasons explained, the Court **GRANTS** Plaintiff leave to proceed IFP, screens his complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), finds most of his allegations fail to state a claim upon which § 1983 relief can be granted, and **GRANTS** him the option to either amend in full or proceed with only his well-pleaded claims.

## I. IFP MOTION

All parties filing a civil case in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 14051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

Although "[t]he previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To properly proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, . . . an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.'" *Hymas*, 73 F.4th at 766 n.3, 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Plaintiff's IFP motion complies with both 28 U.S.C. § 1915(a)(1) and (2). In support, he submitted copies of his CDCR Inmate Trust Account Statement Report, as well as a prison certificate issued by an accounting officer attesting to his balances and deposits. (*See* ECF Nos. 2, 3.) *See also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff maintained a $51.45 monthly balance and had an average $50.17 monthly deposit to his account over the 6-month period immediately preceding the filing of his Complaint. (ECF No. 3 at 2, 3.) At the time of filing, however, Plaintiff's available balance was only $0.14. (*Id.*)

Accordingly, the Court **GRANTS** Plaintiff's motion to proceed IFP (ECF No. 2) and assesses no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court. *See* 28 U.S.C. § 1915(b)(2).

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (citing 28 U.S.C. § 1915A(b)); *see also Hebrard v. Nofziger*, 90 F.4th 1000, 1006–07 (9th Cir. 2024) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). "The standard for dismissal for prisoner claims at screening is the 'same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.'" *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (Section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").

Federal Rule of Civil Procedure 8 "prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation: 'a short and plain statement of the claim showing that [he] is entitled to relief.'" *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting Fed. R. Civ. Proc. 8(a)(2)). Together, Rules 8 and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

///

///

///

**B. Factual Allegations**

Plaintiff identifies as transgender, incontinent, and mobility-impaired, and alleges he is a member of the *Armstrong* class action.[2] (Compl. at 9, 10, 11.) While enroute to breakfast on January 4, 2024, Plaintiff claims RJD Correctional Officer J. Garcia stepped in front of his walker and ordered him to turn around and go another way. (*Id.* at 9.) After Plaintiff objected on grounds that he was "allowed to take the shortest and/or most convenient route" due to disability, Garcia "suddenly grabbed the handlebar of [his] walker," "caus[ed] him to stumble," and "assumed the stance of a linebacker for the San Francisco Forty-Niners." (*Id.*) In an effort "not to ruffle [Garcia's] feathers," Plaintiff asked Garcia to call a sergeant. (*Id.*) Garcia complied by pushing an emergency code button on his state-issued radio, and reported Plaintiff as disruptive, disobedient, aggressive, and "out-of-bounds." (*Id.*) When Correctional Sergeant E. Heraldez arrived, he acknowledged Plaintiff's intended path was shorter, but nevertheless confirmed that Plaintiff must "obey [the] officer's orders." (*Id.*)

On January 19, 2024, Plaintiff was issued a Rules Violation Report ("RVR") as a result of the January 4, 2024 incident, which he claims "caused [him] to spend more time in prison." (*Id.*) He alleges both Garcia and Heraldez issued the RVR "in error" and "to retaliate for [his] complaining about staff misconduct and their failure to provide disability accommodations." (*Id.* at 10.) Plaintiff further alleges Chief Deputy Warden Bryan Holmes performed an incomplete investigation of the January 4, 2024 incident. (*Id.*)

Approximately one year later on January 7, 2025, and as he "began to file grievances (602s) in order to dismiss the fraudulent RVRs" issued against him, Plaintiff claims Correctional Officer Villegas closed a cell door on his torso, legs, and knees "seemingly

---

[2] The *Armstrong* class action is comprised of "all present and future California state prisoners . . . with mobility, sight, hearing, learning[,] and kidney disabilities that substantially limit one or more of their major life activities." *Armstrong v. Newsom*, 58 F.4th 1283, 1288 (9th Cir. 2023).

oblivious" to his mobility impairment. (*Id.*) After Plaintiff yelled, "You're smashing me!" Villegas opened the cell door, but before Plaintiff could move, Villegas "slammed it close[d] on [his] right knee and backside." (*Id.*) Plaintiff claims Defendants Correctional Officer M. Martinez and Psych. Tech. Davis observed the January 7, 2025 incident, but failed to report it or summon medical attention. (*Id.* at 10–11.) Plaintiff further alleges Villegas slammed the cell door on him on "at least four (4) prior occasions" and complained he "move[d] too slow," and contends Correctional Officer Perez's "solution" was simply to "hold open [his] cell door with his bare hands while [Plaintiff] safely exited." (*Id.* at 11.) On January 29, 2025, Plaintiff alleges Villegas refused to open his cell door "all the way so that [he] could safely exit," this time "in retaliation for the 602" Plaintiff had filed against him due to the January 7, 2025 assault. (*Id.*)

On March 22, 2025, Plaintiff contends that after having previously made "daily threats" against him, Correctional Officer R. Estrada "wrote an RVR against [him] for taking an incontinence shower." (*Id.* at 12.) Plaintiff claims this RVR also "extend[ed] the time [he] must spend in prison[,]" and "derive[d] from [his] being an ADA inmate." (*Id.* at 11.)

Four days later, on March 26, 2025, while he was exiting the shower and pushing his wheelchair "with a bucket of washed laundry sitting on [its] seat," Plaintiff claims Investigative Services Unit (ISU) Officer K. Juarez "forcefully grabbed [his] wrist." (*Id.* at 12.) Plaintiff claims he was wearing slippery shower shoes at the time, tried to maintain his balance, and said: "You're going to make me fall," when "a punch to [his] face came so quickly" it rendered him unconscious. (*Id.*) Plaintiff alleges he regained consciousness while "laying on [his] back," only to find Juarez "full body on top of [him], pummeling [his] face, body, and ribs." (*Id.*) Plaintiff contends he slipped in and out of consciousness as he was "beaten, pulled, [and] yanked," claims his wrists and ankles were tightly cuffed "cutting off [his] blood circulation," alleges his cries for help and medical care were ignored, and describes Juarez's "violent-abrupt attack" as "unprovoked" and "unnecessary." (*Id.*)

After this incident, Plaintiff claims Correctional Lieutenant P. Jones authored a "false/fraudulent RVR" charging him with attempted murder on a peace officer, which Sgt. J. Morfin "supervised." (*Id.* at 13.) Plaintiff claims Jones's RVR, contrary to the Audio Video Surveillance System ("AVSS") footage of the incident, falsely reported it was Plaintiff who struck Juarez's right arm, forced him to the ground, and choked him. (*Id.*) Plaintiff notes Jones's CDCR 837 Crime/Incident Report includes accounts of Officers D. Desiderio and H. Razo using physical force and "reverse strikes of a monadnock baton" on Plaintiff in an effort to "remov[e] [his] arms from around . . . Juarez's neck." (*Id.*) Plaintiff also faults Correctional Officer Viloria for submitting "false" photographs of Juarez's neck and Officer P. Reed for "misleading" testimony regarding Plaintiff's level of remorse. (*Id.* at 13, 16.) Plaintiff further contends Defendants D. Rivera, B. Frankowiak, M. Alexander, and D. Moeckly all either "acquiesced" to the false charges, failed to review the AVSS footage, "chose to be team players," or "failed/refused to release [him] from said falsified charges." (*Id.* at 14.) As a result, Plaintiff claims he remains "unlawfully/illegally charged" and was "rehoused in [a] Restricted Housing Unit (RHU) since the day Def. K. Juarez attacked [him]." (*Id.*)

On April 3, 2025, Plaintiff alleges RN Coronado interviewed him in RHU regarding his wheelchair. (*Id.* at 17.) Plaintiff claims Coronado, Dr. A. Mohammed, and Chief Medical Examiner S. Roberts ultimately "denied [him] [his] wheelchair" on June 6, 2025, "due to" the March 26 incident. (*Id.* at 17, 16.) When he "grew physically ill from the pain" and "could no longer . . . perform daily activities," Mohammed, Coronado, and Roberts "reluctantly . . . gave [it] back," but only "[m]onths later" after "the damage was done" and he was "forced to ambulate without it." (*Id.* at 17, 16.)

In the meantime, on April 25, 2025, Plaintiff alleges Correctional Sgt. A. Ruelas "sexually abused and assaulted [him] by intentionally stripping off [his] underwear and touching [his] backside." (*Id.* at 17.) Plaintiff claims he was waist-chained and in a wheelchair at the time, and that other inmates "observed this spectacle." (*Id.*) Once Ruelas saw Plaintiff's penis and buttocks were exposed, he "put [Plaintiff's] shoes over [his] lap"

while Correctional Captain A. Lewis "paraded [his] naked body around Building #6 with . . . Ruelas in tow." (*Id.*) Plaintiff claims other inmates in Building #7 grew angry when they observed Ruelas and Lewis "yank [him] from the wheelchair and drop [his] bare body on the cell floor," and alleges he is treated as "less than . . . human" due to his "being transgender." (*Id.*)

On May 5, 2025, Plaintiff claims he submitted a grievance against Correctional Officer J. Reyes for failing to take him to a radiology appointment. (*Id.* at 15.) He contends J. Reyes "made false [and] misleading statements" to Correctional Lt. Godinez, who "wrote a false RVR stating that [he] refused to go the [his] medical appointment because [he] did not have a wheelchair." (*Id.*) On May 13, 2025, RN Flores interviewed him "regarding [his] wheelchair," but "failed to write/record [his] version of events." (*Id.* at 16.)

On July 18, 2025, Officer J. Reyes was again assigned to escort Plaintiff to a medical appointment, but failed to bring a wheelchair. (*Id.* at 15.) Plaintiff had a four-wheeled walker, but warned Reyes as he began to push him, that he would tip over. J. Reyes "ignored [Plaintiff's] warnings," and continued to push until "suddenly [he] was flipped backwards," his legs were "thrown behind [his] head," and his neck "whipped back sharply" as he was "fl[ung] from the walker seat." (*Id.*) Plaintiff contends Reyes "intentionally caused [him] to flip over as an act of retaliation" for Plaintiff's May 5 grievance. (*Id.*) Plaintiff claims RJD's ADA Coordinator P. Bracamonte reviewed AVSS footage of the July 18 incident, admitted J. Reyes "violated policy" by pushing him while seated in his walker, but nevertheless "failed to remedy the assault on [his] person." (*Id.*) Reviewing Authority H. Moseley later granted Plaintiff's grievance, finding J. Reyes had failed to follow policy during the July 18 escort, and that there was no record of a "clarifying interview" or documentation he had received sufficient incontinence supplies. (*Id.* at 15–16.)

Based on all these events, Plaintiff asserts broad and general violations of his rights to due process, and to be free from cruel and unusual punishment and retaliation. (*Id.* at 9, 15, 17.) He seeks both general and punitive damages and injunctive relief preventing

further acts of retaliation, transfer to a medical institution, the "remov[al] of his RVRs," and with the exception of Psych. Tech. Davis, the CDCR, and RJD's Office of Appeals, sues all Defendants in their individual capacities only.[3] (*See id.* at 2–8, 19.)

**C. Discussion**

*1. Overview*

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

The Court has carefully reviewed Plaintiff's Complaint and finds that while it "asserts multiple claims against multiple defendants without specifying which of the defendants . . . [each] claim is brought against," *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (citation omitted), a liberal construction of Plaintiff's pleading nevertheless reveals plausible Eighth Amendment excessive force and First Amendment retaliation claims involving Defendants H. Villegas, K. Juarez, D. Desiderio, H. Razo, A. Ruelas, A. Lewis, and J. Reyes. *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (en banc) (noting the court's obligation in pro se civil rights cases "to construe

---

[3] While Plaintiff was still incarcerated at RJD when he filed suit, he has since been transferred to Kern Valley State Prison. (*See* ECF No. 7.) When a prisoner is released from prison or transferred to another prison, and there is no reasonable expectation or demonstrated probability that he will again be subjected to the prison conditions from which he seeks declaratory or injunctive relief, as is the case here, the prisoner's claims for injunctive relief may be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (injunctive relief); *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (declaratory relief). Plaintiff's claims for damages against the individual RJD officials named as Defendants, however, remain subject to initial screening. *See, e.g.*, *Finley v. California Treatment Facility*, No. 25-CV-06754-CRB (PR), 2026 WL 1243674, at *1 (N.D. Cal. May 6, 2026).

the pleadings liberally and afford the [Plaintiff] the benefit of any doubt."). Plaintiff fails, however, to allege any other plausible claims for relief as to any other Defendant. Therefore, for the reasons explained below, the Court dismisses the remainder of Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

*2. Excessive Force & Strip Search Claims*

The Eighth Amendment forbids "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Factors relevant to this inquiry include: "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321).

"[T]he Fourteenth Amendment protects . . . the most 'basic subject of privacy . . . the naked body.'" *Vazquez v. County of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020) (second alteration in original) (citation omitted). A Fourteenth Amendment bodily privacy claim "largely mirrors" a Fourth Amendment analysis. *Byrd*, 845 F.3d at 923. Strip searches of prisoners are constitutional if they are reasonable. *See Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th Cir. 2010). Strip-searches that are allegedly abusive, vindictive, harassing, or unrelated to any legitimate penological interest, however, are not. *See Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) (strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Plaintiff's Complaint recounts four separate incidents involving the use of force, the last of which also includes a strip search. First, he claims J. Garcia grabbed the handlebar of his walker and caused him to stumble on January 2, 2024. (Compl. at 9.) A year later,

on January 7, 2025, he claims H. Villegas slammed a cell door on his torso, legs, and knees. (*Id.* at 10.) On March 26, 2025, he claims K. Juarez punched him unprovoked, knocked him unconscious, and pummeled him in the face, body, and ribs. (*Id.* at 12.) During the March 26 incident, Plaintiff further alleges D. Desiderio struck him with a baton in the upper right torso, and H. Razo used other "physical force" to "brutal[ly] assault/attack" him. (*Id.* at 13.) Finally, on April 25, 2025, Plaintiff claims A. Ruelas and A. Lewis "sexually abused and assaulted [him] by intentionally stripping off [his] underwear and touching [his] backside" while he was waist-chained, "parading" him naked between two buildings in a wheelchair, and then "yank[ing]" and "drop[ping] [his] bare body on the cell floor." (*Id.* at 17.)

With the exception of Plaintiff's claims involving Defendant J. Garcia—who is only alleged to have grabbed Plaintiff's walker on January 4, 2024, but not to have applied any force against his person or to have caused him any physical injury whatsoever, *see Wilkins*, 559 U.S. at 38 ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotations and citations omitted))—the Court finds Plaintiff's Complaint otherwise alleges facts sufficient to plausibly show Defendants H. Villegas, K. Juarez, D. Desiderio, H. Razo, A. Ruelas, and A. Lewis used more force than necessary to ensure Plaintiff's compliance with any order or resolve any obvious threat he may have posed to security on January 7, 2025, March 26, 2025, and April 25, 2025. The Complaint also alleges facts that show A. Ruelas and A. Lewis's strip search on April 25, 2025, was unreasonable under the circumstances. *See Byrd,* 629 F.3d at 1141 (requiring courts to weigh the need for a prisoner's cross-gender strip search against the invasion of personal rights the search entails, and to consider: (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted); *see also Iqbal*, 556 U.S. at 678; *Hudson*, 503 U.S. at 7; *Kendall v. Galindo*, No. 23-CV-02709-HSG, 2023 WL 4372700, at *2 (N.D. Cal. July 6, 2023) (finding allegations that correctional officers "yanked" the arms and shoulders of a non-resistant prisoner already

cuffed from behind, "dragged" him across the floor, and then repeatedly "slamm[ed] him face-first into the ground" after he requested to speak to a supervisor sufficient to state a cognizable Eighth Amendment claim of excessive force); *Passineau v. Oxborrow*, No. 1:12-CV-01894 LJO, 2013 WL 5305751, at *4 (E.D. Cal. Sept. 19, 2013) (finding prisoner's excessive force claims sufficient to survive screening where prisoner claimed "he did not offer any resistance," and yet "all three Defendants placed him in handcuffs, lifted him to his feet, and slammed his face into the cell walls on either side of his cell.").

*3. Eight Amendment - Failure to Protect Claims*

To the extent Plaintiff also seeks to hold Defendants M. Martinez, Psych. Tech Davis, and Correctional Officer Perez liable under the Eighth Amendment for watching, witnessing, observing, and yet failing to protect him from Defendant Villegas's use of force with respect to his cell doors (*see* Compl. at 10–11), he fails to allege a plausible claim for relief.

The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,'" and requires that "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297, 302–03). The prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Even assuming Defendant Villegas's habit of slamming Plaintiff's cell doors shut before his entire body was clear posed an objectively serious risk of harm to him, *see*

*Farmer*, 511 U.S. at 834, nothing in Plaintiff's Complaint plausibly suggests that Defendants Martinez, Davis, or Perez played any role in Villegas's decisions with respect to either the opening or closing of his cell doors on any particular occasion. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (quoting 42 U.S.C.§ 1983). Here, Plaintiff claims only that Martinez, Davis, and Perez "watched, observed, and witnessed" Villegas's cell-door "assaults," and further admits Perez was "willing to hold open [his] cell doors with his bare hands until [Plaintiff] safely exited." (*See* Compl. at 10, 11.) But "merely being present at the scene" is insufficient to show either integral participation or personal involvement in Villegas's alleged use of force, let alone Martinez, Davis, or Perez's subjective deliberate indifference to an excessive risk to Plaintiff's health or safety. *See Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002); *Farmer*, 511 U.S. at 834. "[I]n general, one does not 'subject' someone to a deprivation of a constitutional right—or 'cause [someone] to be subjected' to such a deprivation—simply by watching others violate the Constitution." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) ("To be liable under section 1983, a defendant official 'must be more than a mere bystander." (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020))).

*4. Eighth Amendment - Medical Care Claims*

To the extent Plaintiff further claims Defendants Flores, Coronado, Roberts, and Mohammed denied his "right to medical care" by temporarily depriving him of a wheelchair after the March 26, 2025 incident (*see* Compl. at 16–17), he also fails to state a claim upon which § 1983 relief can be granted.

To state an Eighth Amendment claim for inadequate medical care, Plaintiff must allege sufficient facts to show that each defendant he seeks to hold liable acted with deliberate indifference to his serious medical needs. *See Hallett v. Morgan*, 296 F.3d 732,

744 (9th Cir. 2002). "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (cleaned up).

Plaintiff claims he is hearing and mobility-impaired, incontinent, and a member of the *Armstrong* class action, all of which alone or in combination authorized his use of either a four-wheeled walker or wheelchair to ambulate. (*See* Compl. at 9, 10, 12, 15–17.) These allegations are sufficient to plausibly suggest he has serious medical needs. *See Akhtar v. Mesa,* 698 F.3d 1202, 1213 (9th Cir. 2012) (finding allegations that prisoner "suffered from numerous medical conditions and was hearing and mobility impaired" sufficient to show serious medical need).

However, Plaintiff fails to allege further facts sufficient to show that RNs Flores and Coronado, Dr. Mohammed, or Chief Medical Examiner Roberts—while investigating his continued need for a wheelchair while housed in the RHU pending investigation and prosecution of the March 26, 2025 RVR charging him with attempted murder on ISU Officer K. Juarez—demonstrated a "conscious disregard" of any alleged excessive risk to his health. *Hamby*, 821 F.3d at 1092. Specifically, Plaintiff claims only that he was interviewed by Flores and Coronado on April 3, 2025, and again on May 13, 2025, and speculates that Coronado, Mohammed, and Roberts ultimately "denied [him his] wheelchair on June 6, 2025," because it "d[idn't] look good that [he] was attacked while pushing [his] wheelchair." (*See* Compl. at 16.) He does not allege any facts to show, however, that any of these Defendants actually knew he would "gr[o]w physically ill from the pain" caused by its deprivation. (*Id.* at 17.) In fact, Plaintiff admits he was instead provided a four-wheeled walker, and that Mohammed, Coronado, and Roberts later re-authorized his wheelchair use once "it got to the point where [he] could no longer function or perform daily activities." (*Id.* at 15, 17.) "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Mere disagreements between a prisoner and medical officials over the necessity for or extent of treatment do

not meet this mark. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("[A] difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference."); *see also Alexander v. Los Angeles Cnty. Jail Sheriff*, No. CV 11-6981-SVW E, 2014 WL 8392313, at *15 (C.D. Cal. Aug. 15, 2014) (finding no deliberate indifference based on a difference of opinion between medical providers concerning Plaintiff's ambulatory status and his purported need for a wheelchair), *report and recommendation adopted as modified*, 2015 WL 1509214 (C.D. Cal. Mar. 31, 2015), *aff'd sub nom. Alexander v. Los Angeles Cnty. Jail*, 679 F. App'x 572 (9th Cir. 2017).

Thus, as pleaded, the Court finds Plaintiff fails to plausibly allege any deliberate indifference with respect to the temporary deprivation of his wheelchair, and therefore his claims against Defendants Flores, Coronado, Roberts, and Mohammed are dismissed for failing to state a claim under the Eighth Amendment. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1).

*5. First Amendment - Retaliation Claims*

Plaintiff also claims Defendants Garcia, Heraldez, Villegas, and J. Reyes all retaliated against him "for being an ADA inmate," and "complaining about staff misconduct [and] their failure to provide disability accommodations." (Compl. at 10, 11, 12, 15.) Specifically, Plaintiff contends Garcia and Heraldez "chose to retaliate" by filing the January 19, 2024 RVR charging him with being out of bounds despite knowing he had a mobility impairment (*id.* at 10); Villegas refused to open his cell door all the way on January 19, 2025, "in retaliation" for the CDCR 602 Plaintiff filed after Villegas "smash[ed]" him in the cell door on January 7, 2025 (*id.* at 10–11); and J. Reyes "intentionally caused [him] to flip over" during the July 18, 2025 medical escort "as an act of retaliation" for a May 5, 2025 grievance Plaintiff filed against J. Reyes "for failing to take [him] to a radiology appointment" (*id.* at 15).

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison,* 668 F.3d at 1114 (citing *Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir. 2009)). A "viable claim of First Amendment

retaliation" requires factual allegations sufficient to satisfy five "basic elements." *Grenning v. Key*, __ F.4th __, No. 23-3018, 2026 WL 2509407, at *10 (9th Cir. Aug. 26, 2026). They are:

> (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Id.* (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)). The filing of an inmate grievance and other efforts to petition for redress against correctional officials is conduct protected by the First Amendment. *See Bird v. Dzurenda*, 131 F.4th 787, 791 (9th Cir. 2025) ("[I]f prison guards retaliated against Bird for complaints about the actions of *prison officials*, we would easily be within the realm of 'protected conduct.'" (quoting *Rhodes*, 408 F.3d at 567)).

Here, Plaintiff alleges he engaged in protected conduct, specifically CDCR 602 grievances he filed against Defendants Villegas and Reyes, as the basis for his retaliation claims against them. (*See* Compl. at 11, 15.) He also points to adverse actions taken by Villegas and J. Reyes, specifically claiming that Villegas refused to fully open his cell doors so he could safely exit, and J. Reyes intentionally caused his walker to flip over during an escort. *See Brodheim*, 584 F.3d at 1270 ("[T]he mere threat of harm can be an adverse action . . . ."). Further, Plaintiff alleges both Villegas and J. Reyes took these actions because he had filed complaints against them several weeks before. (Compl. at 10–11, 15.) "Timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *Watison*, 668 F.3d at 1114. And while Plaintiff does not expressly claim Villegas or Reyes's conduct "chilled his pursuit of future First Amendment activity," *see Rhodes*, 408 F.3d at 568, he does allege to have suffered "some other harm," specifically, that Villegas "slam[med] shut [his cell] door before [his] entire body was clear," (*id.* at 11), and J. Reyes "injure[d] [his] person" by causing him to be "flipped backwards" and "fl[ung] [] from [his] walker seat." (*Id.* at 15.) "'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges

he suffered some other harm' that is 'more than minimal.'" *Watison*, 668 F.3d at 1114 (first quoting *Brodheim*, 584 F.3d at 1269; and then quoting *Rhodes*, 408 F.3d at 568 n.11). Finally, Plaintiff's allegations suffice to plausibly show that neither Villegas nor J. Reyes' purportedly retaliatory actions "reasonably advanced [any] legitimate correctional goal[s]." *Rhodes*, 408 F.3d at 567–68.

Plaintiff's retaliation claims against Defendants Garcia and Heraldez, however, fail to state a plausible claim for relief. While Plaintiff claims he is a "member of the *Armstrong* class action lawsuit," and contends both Garcia and Heraldez were aware he was disabled, he does not allege to have filed any prior grievances or staff complaints against either of these Defendants, and instead simply concludes their decision to charge him with being "out of bounds" on January 19, 2024, was retaliatory. (*See* Compl. at 10.) Critically, Plaintiff does not allege Garcia or Heraldez were aware of any staff misconduct complaint he may have filed regarding his disability accommodations prior to January 19, 2024, and thus fails to plausibly show a requisite causal connection between the January 19, 2024 RVR and the exercise of his First Amendment rights. *See Soranno's Gasco, Inc. v. Morgan,* 874 F2d 1310, 1314 (9th Cir. 1989) ("[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision.") (quoting *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Conclusory allegations like the ones Plaintiff asserts with respect to Garcia and Heraldez fail to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678–79 (holding that the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting the plausibility standard for pleading a § 1983 claim); *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("Mere speculation that defendants acted out of retaliation is not sufficient.").

*6. Fourteenth Amendment - Due Process Claims*

The bulk of Plaintiff's remaining claims involving Defendants Garcia, Heraldez, Holmes, Estrada, Jones, Viloria, Morfin, Rivera, Frankowiack, Moeckly, Moseley,

Alexander, Reed, Godinez, Bracamonte, and Flores center on allegations that they issued false RVRs against him, or somehow failed in carrying out their duties during either the investigative or administrative review stages of various disciplinary proceedings which resulted in his being "re-housed in [a] restricted housing unit (RHU)" and which "prolong[ed] [his] stay in prison." (Compl. at 10, 12, 14.) While not altogether clear, the Court liberally construes these claims as purported violations of Plaintiff's right to due process under the Fourteenth Amendment. (*Id.* at 14.) *See Alvarez v. Hill,* 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss.").

Specifically, Plaintiff claims: Defendants Garcia and Heraldez charged him with being out of bounds "in error," and Defendant Holmes "suppress[ed] facts" during its investigation (*see* Compl. at 9–10); Defendant Estrada unjustly issued several RVRs against him "for taking [his] incontinence showers" (*id.* at 11–12); Defendant Jones authored a "false/fraudulent RVR" charging him with Defendant Juarez's "attempted murder" which Defendant Morfin "supervised" (*id.* at 12–13); Defendant Viloria submitted false photographs of the incident depicting Juarez's injuries (*id.* at 13); Defendant Reed entered a "misleading" and "not entirely accurate" version of the events when stating that Plaintiff "revealed no remorse" (*id.* at 16); Defendants Rivera, Frankowiack, and Alexander "reluctantly acquiesced," and "chose" to be "team player[s]" to "cohort" with their fellow officers' falsified reports (*id.* at 14); Defendant Moeckly "all but admitted" Plaintiff's "allegations of staff misconduct and excessive or unnecessary force . . . ha[d] merit," yet "failed/refused" to invalidate the "falsified charges" (*id.* at 14); Defendant Godinez "wrote a false RVR stating that [Plaintiff] refused to go to a medical appointment" (*id.* at 15), and Defendant Bracamonte "failed to remedy" Defendant J. Reyes's "assault on [Plaintiff's] person, despite reviewing AVSS video footage of his being "thrown from [his] walker" (*id.*).

The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Although the level of the hardship must be determined in a case-by-case determination, courts look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez,* 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486–87). Only if an inmate has alleged facts sufficient to show a protected liberty interest does the court next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Id.* at 860.

As currently pleaded, Plaintiff's Complaint fails to allege facts which plausibly show the disciplinary punishment he faced as a result of any RVR subjected him to any "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.*; *Sandin*, 515 U.S. at 484. Plaintiff does not compare the conditions of his confinement before or after any of his allegedly falsified disciplinary convictions. Nor does he allege the duration of any term of discipline, or in any way describe or explain the degree of restraint imposed. *Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486–87).

Moreover, Plaintiff's pleading contains no "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that any individual Defendants' actions "present a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence," or caused him to suffer an "atypical" or "significant hardship," *Sandin*, 515 U.S. at 485, 484; *see also Keenan v. Hall*, 83 F.3d 1083, 1088–89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

What's more, to the extent Plaintiff essentially claims every RVR issued against him was simply false, unfair, or unsubstantiated, he fails to state a claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997), *aff'd*, 168 F.3d 498 (9th Cir. 1999) (Table). "[T]he filing of false disciplinary charges by itself does not state a

claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves." *Gadsden v. Gehris*, No. 20-CV-0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020); *Muhammad v. Rubia*, No. C 08-3209 JSW (PR), 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983." (internal citation omitted)), *aff'd*, 453 F. App'x 751 (9th Cir. 2011); *Harper v. Costa*, 2009 WL 1684599, at *2–3 (E.D. Cal. June 16, 2009) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983."), *aff'd*, 393 F. Appx. 488 (9th Cir. 2010).

For these reasons, the Court finds Plaintiff's falsified RVR claims fail to state a plausible due process claim for relief as to any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

*7. ADA & Transgender Discrimination Claims*

Finally, while Plaintiff does not plead a discrete statutory or freestanding constitutional violation on the part of any individual Defendant attributable to his status as a disabled or transgender person, he nevertheless maintains broadly that "each and every act of retaliation [taken] by the[] Defendants stem[s]/derive[s] from [his] being an ADA inmate." (Compl. at 11.) Plaintiff claims he is "mobility and hearing impaired," suffers from "incontinence issues," and identifies as transgender (*id.*), but he does not attribute any violation of his right to be free from unlawful discrimination under the Equal Protection Clause of the Fourteenth Amendment to any individual Defendant,[4] nor does he claim the

---

[4] "The Equal Protection Clause commands that 'no State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Roe by & through Roe v. Johnston*,

CDCR itself failed to provide him with reasonable accommodations under the Americans with Disabilities Act.[5] (*Id.*) For these reasons alone, Plaintiff's implied ADA and transgender discrimination claims are dismissed for failing to state a claim upon which § 1983 relief can be granted. *See, e.g.*, *Moore v. Macomber,* No. 3:25-CV-2980-AJB-JAC, 2026 WL 2722542, at *3 (S.D. Cal. Sept. 15, 2026) (finding prisoner's "conclusory allegations, lacking in factual support" failed to state a claim under the ADA); *see also Turner v. Ralkey,* No. 3:20-CV-5472-TL-DWC, 2022 WL 18460747, at *18 (W.D. Wash.

---

No. 25-6970, 2026 WL 2998232, at *6 (9th Cir. Oct. 6, 2026) (quoting U.S. Const. amend. XIV, § 1.) The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). But "[t]o prevail on an Equal Protection claim, 'plaintiffs must show that a class that is similarly situated has been treated disparately.'" *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017) (quoting *Christian Gospel Church, Inc. v. City & Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990)). A plaintiff can state an Equal Protection claim in two ways: (1) by alleging "facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class," *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (alteration in original) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)); or (2) as a "class of one" by alleging that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "For the purposes of equal protection analysis, the disabled do not constitute a suspect class." *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996). The Supreme Court has also "not previously held that transgender individuals are a suspect or quasi-suspect class." *United States v. Skrmetti*, 605 U.S. 495, 517 (2025).

[5] To prove that a public entity violated Title II of the ADA, Plaintiff must show: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. Cnty of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (internal quotation marks omitted). To recover monetary damages for a violation of Title II, Plaintiff must also show that the public entity defendant acted with deliberate indifference. *Id.* at 1138; *Adom v. Cal. Dep't of Corr. & Rehab.*, __ F.4th __, No. 24-4756, 2026 WL 2639549, at *5 (9th Cir. Sept. 8, 2026).

Apr. 26, 2022) (dismissing ADA and RA claims when transgender plaintiff failed to meet her burden to establish defendants' decisions regarding her housing were "by reason of" her gender dysphoria); *Olson v. Carter*, No. 2:21-CV-00929-JAM-CKD-PS, 2021 WL 3115126, at *7 (E.D. Cal. July 22, 2021) (dismissing ADA and RA claims as conclusory where " the complaint does not contain any additional supporting facts" to show the plaintiff was denied benefits "because of [their] disability").

*8. Remaining Defendants*

While Plaintiff also includes the CDCR, RJD's Office of Appeals, and Reviewing Authority A. Reyes in his list of Defendants, he makes no reference to and fails to include any factual allegations involving these parties whatsoever. (*Id.* at 4, 6, 8.) Therefore, any purported claims for relief as to these parties are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Jones v. Comm. Redev. Agency of L.A.,* 733 F.2d 646, 649 (9th Cir. 1984) (holding that even a pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" to state a claim).

*9. Summary and Plaintiff's Options*

In sum, while Plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims against Defendants H. Villegas, K. Juarez, D. Desiderio, H. Razo, A. Ruelas, A. Lewis, and J. Reyes are sufficiently pleaded, the remainder of his claims involving all other Defendants are *sua sponte* dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Since it is not "absolutely clear" Plaintiff cannot fix his pleading deficiencies, *see Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015), he has two options: (1) Plaintiff may simply notify the Court of his intent to proceed only with his Eighth Amendment excessive force and First Amendment retaliation claims against Defendants H. Villegas, K. Juarez, D. Desiderio, H. Razo, A. Ruelas, A. Lewis, and J. Reyes; *or* (2) he may instead file an Amended Complaint that both includes his adequately pleaded claims *and* corrects his deficiencies of pleading with respect to all other parties and purported claims for relief.

If Plaintiff notifies the Court that he wishes to proceed only with his Eighth

Amendment excessive force and First Amendment retaliation claims against Defendants H. Villegas, K. Juarez, D. Desiderio, H. Razo, A. Ruelas, A. Lewis, and J. Reyes, the Court will direct the Clerk to issue a summons upon them and order the U.S. Marshal to effect service on his behalf pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3). But his insufficiently pleaded claims against all other Defendants will remain dismissed. If Plaintiff instead chooses to file an Amended Complaint, that pleading will be subject to another preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) before the Court determines whether U.S. Marshal service upon any Defendant is warranted. If Plaintiff does nothing, the Court will enter a final order of dismissal of those claims presently dismissed in this order and proceed on those claims not dismissed.

## III. CONCLUSION

Accordingly, for the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP. (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee owed in this case and forward monthly payments from Plaintiff's account to the Clerk of the Court as required by 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** all claims against Defendants Perez, M. Martinez, Davis, R. Estrada, P. Jones, J. Morfin, M. Alexander, R. Rivera, P. Reed, Viloria, B. Frankowiak, J. Moeckly, H. Moseley, J. Garcia, E. Heraldez, Bryan Holmes, A. Reyes, A. Mohammed, L. Coronado, J. Flores, C. Godinez, S. Roberts, P. Bracamonte, CDCR, and the Office of Appeals for failure to state a plausible claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

5. **GRANTS** Plaintiff forty-five (45) days' leave from the date of this Order in which to ***either***: (A) file a Notice of Intent to Proceed with his Eighth Amendment excessive force and First Amendment retaliation claims against Defendants H. Villegas, K.

Juarez, D. Desiderio, H. Razo, A. Ruelas, A. Lewis, and J. Reyes only; ***or*** (B) file an Amended Complaint that corrects the deficiencies of pleading identified in this Order. If Plaintiff files a Notice of Intent to proceed against H. Villegas, K. Juarez, D. Desiderio, H. Razo, A. Ruelas, A. Lewis, and J. Reyes only, he may include a request that the U.S. Marshal effect service of summons and his original Complaint upon them pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

If Plaintiff instead chooses to amend, his new pleading must be clearly titled as his Amended Complaint, contain S.D. Cal. Civil Case No. 26-cv-00267-BTM-DEB in its caption, and be complete by itself without reference to his original Complaint. Defendants not named and any claim not realleged in Plaintiff's Amended Complaint, *including the currently sufficient Eighth Amendment excessive force and First Amendment retaliation claims against Defendants H. Villegas, K. Juarez, D. Desiderio, H. Razo, A. Ruelas, A. Lewis, and J. Reyes in his original Complaint*, will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend are "considered waived if not repled" in an amended pleading).

If Plaintiff fails to file an Amended Complaint, or otherwise respond to this Order within 45 days, the Court will enter a final order dismissing the presently dismissed claims.

**IT IS SO ORDERED.**

Dated: October 26, 2026

Honorable Barry Ted Moskowitz
United States District Judge